J-S31017-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN THE INTEREST OF: K.T.P., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: K.T.P., A MINOR | No. 1347 WDA 2018 |

Appeal from the Dispositional Order Entered August 16, 2018
In the Court of Common Pleas of Westmoreland County
Juvenile Division at No.: CP-65-JV-0000351-2016

BEFORE: OLSON, STABILE, and McLAUGHLIN, JJ.

MEMORANDUM BY STABILE, J.:                    **FILED JULY 22, 2019**

Appellant K.T.P. appeals from the August 16, 2018 dispositional order of the Court of Common Pleas of Westmoreland County ("juvenile court"), which adjudicated him delinquent of burglary (not adapted for overnight accommodations, no person present), criminal mischief (intentionally damaging the real or personal property of another), and theft by unlawful taking,[1] and directed him to pay $40,425.30 in restitution. Upon review, we affirm.

The facts and procedural history of this case are undisputed.[2] On October 5, 2016, the Commonwealth filed a delinquency petition against Appellant, alleging that, on June 29, 2016, when Appellant was seventeen

_____

[1] 18 Pa.C.S.A. §§ 3502(a)(4), 3304(a)(5), and 3921(a), respectively.

[2] Unless otherwise noted, these facts are taken from the trial court's November 30, 2018 opinion. *See* Trial Court's Opinion, 11/30/18 (unpaginated).

years old, he and two other juveniles entered the locked premises of the Latrobe Speedway. There, they broke into buildings and vandalized property by spray painting graffiti on the walls and windows, kicking in doors, carving symbols into a conference table, and throwing bottles of soda onto the ground.

The juvenile court held adjudicatory hearings on February 1, 2018 and May 9, 2018. At the February 1, 2018 hearing, the Commonwealth presented the testimony of Kathleen and Dennis Bates, husband and wife, and George Teslovich. Mr. and Mrs. Bates lease the Latrobe Speedway. N.T. Adjudication Hearing, 2/1/18, at 4. Mr. Bates estimated that the juveniles caused $541.42 in damages to his wife's and his personal property. *Id.* at 27-28. Mr. Teslovich testified that he was the president of the corporation owning and operating Latrobe Speedway. When asked whether he had an estimate for the damage caused by the juveniles, Mr. Teslovich replied "I compiled one. I got numbers from different suppliers, different vendors, different contractors to replace the stuff that was missing and the stuff that was damaged." *Id.* at 34. He further testified that the damage exceeded $5,000.00. *Id.*

Following the May 9, 2018 hearing, the juvenile court adjudicated Appellant delinquent of burglary not adapted for overnight, criminal mischief and theft by unlawful taking. On August 16, 2018, the juvenile court held a dispositional hearing, at which Mr. Teslovich testified about monetary losses he incurred because of the juveniles' criminal acts committed at Latrobe Speedway on June 29, 2016. Specifically, for purposes of seeking restitution, Mr. Teslovich provided receipts, estimates, and bills for the repairs to the

building located at Latrobe Speedway and items within the building. *See* N.T. Dispositional Hearing, 8/16/18, at 6-23. Among other things, Mr. Teslovich testified that he received an estimate for $32,194.38 from Inselmini Construction company ("Inselmini") and the Commonwealth moved for the admission into evidence of Inselmini's estimate. Appellant did not object. *Id.* at 17. Mr. Teslovich also testified that he had $215 in damages for "paint, PB blaster, sign, rug, fan, and gate." *Id.* at 23. He further testified that he incurred $500 in costs to clean the premises before he "could get started on any repairs." *Id.* Mr. Teslovich also testified that he suffered $1,000.00 in revenue losses caused by "inoperable conditions" following the incident at issue. *Id.* Appellant's counsel did not object to the introduction into evidence of Mr. Teslovich's claimed losses.

On cross-examination, Mr. Teslovich acknowledged that, despite receiving an estimate from Inselmini, he did not engage Inselmini to repair the damage. *Id.* at 25-26. Mr. Teslovich testified:

> If I recall, going back 2 years in time, [Inselmini] wanted to come in, and it was going to take them, like, 90 days or something to do it, 60 days, whatever the time frame was, and we didn't have the availability to have [Inselmini] do it. So I had [Inselmini] do some of the repairs, and as we went along, we did a lot of the repairs from different vendors when we had a rain-out or something like that. We just – we're a seasonal operation. We've only run 8 races a year there. I just can't lose that time.

*Id.* at 26. Thereafter, Appellant and one of his co-defendants were called to the stand to testify. Following their testimony, Appellant's counsel objected to Mr. Teslovich's claim for $32,194.38 in damages. *Id.* at 39-40. In so doing, Appellant's counsel asserted that the amount was "purely speculative,"

because it was "an estimate." *Id.* at 41. Appellant's counsel argued that the juvenile court was not permitted to "take into consideration an estimate and use that amount to frame a restitution award to the victim." *Id.* Appellant's counsel also, for the first time, challenged the $215, $500, and $1,000.00 in losses claimed by Mr. Teslovich. *Id.* at 41-42. In total, Appellant's counsel objected to $33,909.38 in losses claimed by Mr. Teslovich. The juvenile court ultimately placed Appellant on probation and directed him to pay $40,425.30 in restitution to Mr. Teslovich, jointly and severally with his co-defendants.[3] The juvenile court also directed Appellant to pay $541.42 in restitution to Mr. and Mrs. Bates. *Id.* at 60-61. In support of its restitution order, the court reasoned:

> Obviously, I have to take into account both the nature of the crime and the earning capacity of the juveniles. The nature of the crime is very serious. I hear Mr. Teslovich testify. He's come to court over and over again, and he's testified about the unbelievable amount of damage that was done in this case, and the fact that he's had to pay this money out of his own pocket, that there's no insurance coverage. I don't know if insurance coverage is relevant or not when you're determining a restitution claim, but for him, it's very relevant. He has to pay it out of pocket and has come to court and deal with this situation for 2 years. It just - - it's never okay to break in and do vandalism, but probably many people, if not most, have done that at - - gone corning or have thrown an egg or something. I don't condone that, but I understand that, but to go in and create the amount of damage, I'm surprised that Mr. Teslovich is even able to operate his business after the amount of damage that was done here.
>
> And the - - I've heard no evidence that neither of these juveniles are able to work. Is it possible that they would - - one would be required to pay the entire amount, which by the way is $40,425.30? I guess it is if it's joint and several, but the greater

---

[3] The award of $40,425.30 in restitution did not include the $1,000.00 Mr. Teslovich claimed for loss of revenue. However, the award included other amounts that are not at issue in this appeal.

likelihood is that they would not have to pay the entire amount because each of them - - I don't see a reason why each of them can't contribute. [Co-defendant] has a job, a pretty good job. I don't see why [Appellant] can't work either. He says he has a herniated disc. He hasn't brought forth any evidence, but he has done some work in the past. He does have some training so it's a lot of money, but it's a lot of damage that they caused. . . .

The reason for my disposition is to hold the juvenile accountable, to address his actions with regard to the juvenile acts for which he was adjudicated, to teach him positive and appropriate peer relations, to protect the victim, to address poor decision making and impulse control, and to address problems with criminal thinking and healthy relationships.

*Id.* at 54-56. Appellant timely appealed. The juvenile court directed Appellant file a Pa.R.A.P. 1925(b) statement of errors complained of on appeal. Appellant complied, raising several assertions of error. In response, the trial court issued a Pa.R.A.P. 1925(a) opinion.

On appeal, Appellant argues only that "the amount of restitution ordered by the court was speculative and/or excessive as it was not supported by the record and said evidence was not presented at adjudication hearing."[4,5]

---

[4] To the extent Appellant argues that the juvenile court erred in conducting the restitution hearing after the adjudication hearing, the argument is waived because Appellant does not develop it in the argument section of his brief or provide any meaningful analysis. *See* Pa.R.A.P. 2119(a), (b); *In re W.H.*, 25 A.3d 330, 339 n.3 (Pa. Super. 2011) (noting that issues are waived if appellate brief fails to provide meaningful discussion with citation to the record and relevant authority), *appeal denied*, 24 A.3d 364 (Pa. 2011); *Commonwealth v. Hardy*, 918 A.2d 766, 771 (Pa. Super. 2007) ("[I]t is an appellant's duty to present arguments that are sufficiently developed for our review. The brief must support the claims with pertinent discussion, with references to the record and with citations to legal authorities.") (citations omitted), *appeal denied*, 940 A.2d 362 (Pa. 2008).

[5] Our review of the record indicates that the juvenile court imposed restitution herein under Section 6352(a)(5) of the Juvenile Act, 42 Pa.C.S.A. § 6352(a)(5). Consequently, we decline Appellant's invitation to decide this

Appellant's Brief at 4. Appellant essentially argues that the restitution award for $40,425.30 is excessive because it is premised on estimates. *Id.* at 8. In particular, Appellant asserts that the $32,194.38 estimate from Inselmini, the $215 claim for paint and blaster, and the $500 claim for cleaning services are speculative because Mr. Teslovich did not provide any receipts or cancelled checks to substantiate the amounts.

Because "the Juvenile Act grants to the court broad discretion in disposition," we review a dispositional order for an abuse of discretion. *Commonwealth v. K.M.-F.*, 117 A.3d 346, 350 (Pa. Super. 2015) (quoting *In the Interest of A.D.*, 771 A.2d 45, 53 (Pa. Super. 2001) (*en banc*). Section 6352(a)(5) provides that, once a child is adjudicated delinquent,

> the court may make any of the following orders of disposition determined to be consistent with the protection of the public interest and best suited to the child's treatment, supervision, rehabilitation and welfare, which disposition shall, as appropriate to the individual circumstances of the child's case, provide balanced attention to the protection of the community, the imposition of accountability for offenses committed and the development of competencies to enable the child to become a responsible and productive member of the community:
>
> . . . .
>
> [o]rdering payment by the child of reasonable amounts of money as fines, costs, fees or restitution as deemed appropriate as part of the plan of rehabilitation considering the nature of the acts committed and the earning capacity of the child, including a contribution to a restitution fund.

---

case under Section 6352(a)(6), which provides that "[a]n order of terms of probation may include . . . restitution . . . not in excess of **actual damages** caused by the child which shall be paid from earnings of the child received through participation in a constructive program of service or education acceptable to the victim.") (emphasis added).

42 Pa.C.S.A. § 6352(a)(5).

In ***In re M.W.***, 725 A.2d 729 (Pa. 1999), our Supreme Court considered the juvenile court's authority to award restitution under Section 6352(a)(5). The Court observed that, in an adult criminal proceeding, "restitution may be imposed either as a direct sentence, or as a condition of probation. When imposed as a sentence, the injury to property or person for which restitution is ordered must directly result from the crime. However, when restitution is ordered as a condition of probation, the sentencing court is accorded the latitude to fashion probationary conditions designed to rehabilitate the defendant and provide some measure of redress to the victim." ***M.W.***, 725 A.2d at 732 (citations omitted). Thus, when restitution is imposed as a condition of probation, the trial court is granted "the flexibility to determine all the direct and indirect damages caused by a defendant and then permit the court to order restitution so that the defendant will understand the egregiousness of his conduct, be deterred from repeating this conduct, and be encouraged to live in a responsible way." ***Id.*** Simply put, "the requirement of a nexus between the damage and the offense is relaxed where restitution is ordered as a condition of probation." ***Id.*** Our High Court in ***M.W.*** ruled that the principles applicable to restitution imposed as a condition of probation rather than as a direct sentence were applicable to Section 6352(a)(5). The Court reasoned:

> the rehabilitative policy of the Juvenile Act's restitution provision corresponds to that which supports the imposition of restitution ***as a condition of probation in a criminal case***. Section 6352, unlike the provision of the Crimes Code providing for restitution

as a condition of sentence, ***does not contain language specifically requiring that the loss or injury be a direct result of the juvenile's wrongful conduct***. Consistent with the protection of the public interest and the community, the rehabilitative purpose of the Juvenile Act is attained through accountability and the development of personal qualities that will enable the juvenile offender to become a responsible and productive member of the community. ***See*** 42 Pa.C.S.A. § 6301(b)(2). Thus, the policies underlying the Juvenile Act and its restitution provision, as well as the plain language of Section 6352, serve to invest the juvenile court with a broad measure of discretion to apportion responsibility for damages based upon the nature of the delinquent act and the earning capacity of the juvenile.

***M.W.***, 725 A.2d at 732-33 (emphases added). In ***In re D.G.***, 114 A.3d 1091 (Pa. Super. 2015), the appellant challenged the juvenile court's restitution award, asserting that "there was no evidence to support the amount of restitution required," and that "the court accepted the uncorroborated, conclusory receipts as accurate." ***D.G.***, 114 A.3d at 1097 (brackets omitted). We disagreed, holding that "the amount of restitution ordered is supported by evidence and consistent with the testimony of the victim as well as the purposes of the Juvenile Act." We noted that the victim filled out a restitution claim form, provided his accounting, and testified at length as to the various damages he suffered, including the repair of the doors and frame, the ADT alarm, the doorknobs, and the broken windows. ***Id.*** at 1097-98. We also noted that the juvenile court "has broad discretion in awarding restitution." ***Id.*** at 1098.

Instantly, based upon our review of the record, as detailed above, and consistent with ***D.G.***, we conclude that the trial court did not abuse its discretion in awarding to Mr. Teslovich $40,425.30 in restitution to be paid

jointly and severally by Appellant and his co-defendants. The record supports the amount of restitution because Mr. Teslovich provided estimates and accounting of his losses at the dispositional hearing. Additionally, as the trial court explained:

> [Appellant] and his [co-defendants] were found to have committed the delinquent acts which caused the damages sustained by the victims. The victims testified at length about the damage to their property and, without objection, the amounts of damage. Mr. Teslovich provided the [juvenile] court with receipts and an itemized estimate in support of his testimony, and these were admitted without objection. The court found the victims to be credible and the costs to be reasonable.
>
> . . .
>
> While the [juvenile] court acknowledges that the amount of restitution ordered in this matter is quite high, it is an accurate reflection of the amount of damage caused by [Appellant] and his [co-defendants]. By ordering that the total amount of restitution be held jointly and severally between [Appellant] and his [co-defendants], the court is holding the juveniles responsible for their actions and requiring that the victims be fully compensated in accordance with the rehabilitative purpose of the [Juvenile] Act.

Trial Court Opinion, 11/30/18 (unpaginated). Accordingly, because the record supports the restitution award, we conclude that Appellant's issue lacks merit.

Dispositional order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/22/2019

- 9 -